UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

   Plaintiff,

v.

MICHAEL HUMMEL,

   Defendant

Case:2:09-cr-20566
Judge: Lawson, David M.
MJ: Majzoub, Mona K
Filed: 11-24-2009 At 04:27 PM
INDI USA V. SEALED MATTER (DA)

**VIOLATIONS**:

WIRE FRAUD
(18 U.S.C. 1343, 1346, 2)

THEFT OF TRADE SECRETS
(18 U.S.C. 1832, 2)

_____/

## INDICTMENT

THE GRAND JURY CHARGES:

### COUNT 1
(Wire Fraud, 18 U.S.C, 1343, 1346, 2)

At times pertinent to this Indictment:

**General Allegations**

1. Quicken Loans Inc. ("QL") was based in Livonia, Michigan, and sold financial products to the public, including residential mortgages and loans. QL sold its products in interstate commerce.

2. QL offered its products to the public by websites and other forms of

advertising. For its websites, QL employed engineers, developers, designers and others to create, construct, and operate the sites. As such, QL invested in research and development for its websites.

3. QL maintained a Web Interaction Team whose members worked to improve QL's websites, including the interface between the portions of its websites which the public would see and use (the website's front end) and the data which QL used to support its websites (the website's back end).

4. Starting in or about Fall 2005, until a date unknown to the Grand Jury, QL's Web Interaction Team worked on a proprietary project referred to within QL as "Skeletor."

5. "Skeletor" was a computer operating framework which supported QL's websites and their public interface (the website's front end); specifically, "Skeletor" included methods, processes, programs, codes, and commands which caused webpages to load and be displayed on QL's websites for public use. As such, "Skeletor" allowed QL's websites to operate quickly and efficiently, thereby providing the public with better service on the websites.

6. "Skeletor" was QL's trade secret and its intellectual property. At its Livonia, Michigan, office QL undertook reasonable steps to protect its

trade secrets and intellectual property in "Skeletor." Some of QL's protective measures included, among others, physical security of its premises, limiting access to those employees who needed access to perform their job duties, and using computer security policies.

7. In creating "Skeletor," QL's personnel placed statements in the computer code that "Skeletor" was QL's property and protected by copyright.

8. QL's "Skeletor" had independent economic value, separate and apart from its development costs, and it was used in products to be sold in interstate commerce. QL's trade secrets and intellectual property in "Skeletor" derived independent economic value, both actual and potential, from not being generally known to the public.

**Hummel's Employment at QL**

9. Defendant Michael Hummel was a resident of Ann Arbor and, later, Saline, Michigan. From in or about February 2005, until in or about November 2006, Hummel was employed at QL as a Senior Web Developer and Sr. Software Engineer, working on the Web Interaction Team at QL's offices at Livonia, Michigan, or from his residence.

10. On or about February 7, 2005, Hummel signed a QL "Employee Invention Assignment, Non Disclosure, Privacy & Security Agreement," which

included provisions regarding protection of QL's trade secrets and intellectual property.

11. At QL, Hummel was provided with a computer, an e-mail account, and internet access.

### Hummel's Fiduciary Duties to QL

12. As an employee of QL, Hummel occupied a fiduciary position of trust, confidence, and obligation. In performing his duties for QL, Hummel owed to it the fiduciary duties of fidelity, honesty, candor, loyalty, and care. Hummel was obligated to provide QL with his undivided loyalty free of conflicts of interests or potential conflicts of interests. Hummel was also obligated to protect and preserve QL's tangible and intangible property, including its trade secrets and intellectual property in "Skeletor." Specifically, Hummel was obligated not to misappropriate, steal, or remove QL's trade secrets or intellectual property, including "Skeletor."

13. Hummel was also obligated not to transfer QL's trade secrets or intellectual property in "Skeletor" to any other company, and not to use "Skeletor" to develop a similar framework for another company or website.

14. QL also had an intangible right to Hummel's honest services in the operation of the company's business. As such, Hummel owed to QL a duty

to: [A] refrain from the use of his position for private financial gain; [B] disclose to QL conflicts of interest and other material information that resulted in his direct or indirect personal financial gain; [C] refrain from stealing or misappropriating QL's trade secrets or intellectual property, and [D] refrain from transferring QL's trade secrets or intellectual property to another company, or using the trade secrets or intellectual property to develop or operate websites which did not belong to QL.

**Hummel's Theft of Trade Secrets and Intellectual Property**

15. In or about March through May 2006, the exact date being unknown to the Grand Jury, and while still a QL employee, Hummel discussed performing work for a California company ("Company X") which marketed its products via websites.

16. In or about May 2006, the exact date being unknown to the Grand Jury, Company X offered Hummel a consulting position to develop its websites, and Hummel accepted the offer. In working for Company X, Hummel used QL's "Skeletor" to design websites for Company X.

17. Hummel did not notify QL of his job with Company X or his plans to use "Skeletor" in his new position with Company X. Instead, Hummel continued to hold himself out to QL as a faithful, conscientious employee

who was working solely for QL.

18. In or about May, 2006, through November 2006, the exact dates being unknown to the Grand Jury, Hummel, acting without authority, misappropriated and stole "Skeletor" from QL and used it in his work for Company X. In doing so, Hummel acted to injure the owner of the trade secrets and intellectual property (QL), and to advance his personal economic interests, by exploiting QL's trade secrets and intellectual property in his work for Company X.

19. At no time did Hummel report to QL his misappropriation and theft of its trade secrets and intellectual property in "Skeletor" and his use of it on behalf of Company X.

20. In or about November 2006, QL resigned his employment with QL. Upon leaving the company, Hummel did not return the stolen copies of "Skeletor" to QL.

21. Hummel used "Skeletor" in his work for Company X, ultimately charging Company X more than $35,000 for his work developing its websites.

**The Scheme and Artifice to Defraud QL**

22. From on or about a date unknown to the Grand Jury (but no earlier than April 2006), until a date unknown to the Grand Jury (but no later than

November 2006), Hummel devised a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations or promises (which were material to QL), specifically to defraud QL of: [A] its property, that is, its trade secrets and intellectual property in "Skeletor," and [B] QL's intangible right to Hummel's honest services in the execution of his duties as a faithful QL employee.

23. As more fully set forth below, on or about the date listed below, in the Eastern District of Michigan, Southern Division, and elsewhere, Defendant

**MICHAEL HUMMEL**

having knowingly devised and intending to devise, a scheme and artifice to defraud (including a scheme and artifice to defraud QL of the intangible right to Hummel's honest services), and to obtain money and property by means of false and fraudulent pretenses, representations and promises, for the purposes of executing the scheme and artifice, and attempting to do so, knowingly transmitted and caused to be transmitted by means of wire communications in interstate commerce, certain writings, signs, signals, pictures and sounds, to wit:

| Count | Date and Item Sent by Interstate Wire Communication |
|---|---|
| 1 | On or about June 18, 2006, Hummel, using an interstate wire communication facility, transmitted an e-mail and an attached file (the attachment being an invoice for work involving "Skeletor" which Hummel performed June 4, 2006) to Company X for payment |

**All in violation of Title 18, United States Code, Sections 1343, 1346, 2.**

## COUNT 2
## (18 U.S.C. 1832(a)(1), (a)(2), (a)(4) 2,
## Theft of Trade Secrets and Attempted Theft of Trade Secrets)

24. The allegations contained in paragraphs 1 through 21 above are incorporated by reference as if set forth fully herein.

25. In or about April, 2006, until in or about November 2006, in the Eastern District of Michigan, Southern Division, and elsewhere, Defendant

**MICHAEL HUMMEL,**

did knowingly and intentionally, with the intent to convert information that included trade secrets belonging to QL (including the methods, processes, programs, and codes described above), that were related to and included in products produced for and placed in interstate commerce, to the economic benefit of a person other than the owner thereof (QL), and intending and knowing that the offense would injure the owner of the trade secrets (QL), did steal, without authorization appropriate, take, carry away, transmit, deliver, send, communicate and convey such information, and attempted to

do so, to wit, by stealing, converting and misappropriating QL's "Skeletor."

**All in violation of Title 18, United States Code, Sections 1832(a)(1), (a)(2) and (a)(4) and Section 2.**

THIS IS A TRUE BILL

 s/ Foreperson Grand Jury
FOREPERSON
GRAND JURY


TERRENCE BERG
United States Attorney

s/ ROSS I. MacKENZIE
Deputy Chief, Economic Crimes Unit
Bar Id:  (P 29371)

s/ CHRISTOPHER L. VARNER
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
Phone: (313) 226-9684
E-mail: Christopher.Varner@usdoj.gov
Bar Id: 413642

Dated: November 24, 2009

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cov** | Case: 2:09-cr-20566<br>Judge: Lawson, David M.<br>MJ: Majzoub, Mona K<br>Filed: 11-24-2009 At 04:27 PM<br>INDI USA V. SEALED MATTER (DA) |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to comp

**Reassignment/Recusal Information** This matter was opened in the USAO prior to August 15, 2008 **[ X ]**

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)¹: | **Judge Assigned:** |
| ☐ Yes      X No | **AUSA's Initials:** CLV |

**Case Title:** USA v. MICHAEL HUMMEL

**County where offense occurred:** WAYNE

**Check One:**     X Felony          ☐ Misdemeanor          ☐ Petty

    X  Indictment/_____Information --- **no** prior complaint.
    _____Indictment/_____Information --- based upon prior complaint [Case number: ]
    _____Indictment/_____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

**Superseding Case Information**

**Superseding to Case No:** _____     **Judge:** _____
    ☐    Original case was terminated; no additional charges or defendants.
    ☐    Corrects errors; no additional charges or defendants.
    ☐    Involves, for plea purposes, different charges or adds counts.
    ☐    Embraces same subject matter but adds the additional defendants or charges below:
        **Defendant name**            **Charges**            **Prior Complaint (if applicable)**

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

November 24, 2009
       Date

CHRISTOPHER L. VARNER
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone: (313) 226-9684
Fax: (313) 226-2873
E-Mail address: Christopher.Varner@usdoj.gov
Attorney Bar #: 413642 (DC)

---

¹ Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

10/13/09